In the Matter of the Estate of FREDERICK E. BELCHER, Deceased.

Surrogate's Court, New York County, March 9, 1927.

**Executors and administrators — accounting — administratrix surcharged
with loss for failure to sell stock subscription rights — reliance on
attorney's advice does not relieve administratrix from liability — legal
duty of active vigilance imposed on administratrix — exemptions —
piano being exempt property should be set off to widow under Surro-
gate's Court Act, §§ 200, 267 — widow did not waive right therein by
failing to assert claim before referee — attorney and client — fee reason-
able in view of standard of charges in estates in New York county.**

In this accounting proceeding, the account of the administratrix of decedent's
estate was properly surcharged with loss from failure to sell certain subscription

rights to shares of stock owned by the estate, where it appears that though she received notice of the increased capitalization of the corporation with a notification of a stockholder's right to subscribe to additional stock share for share, she allowed the subscription period to expire without any action on her part, since the law imposes upon executors and administrators or other representatives the duty of active vigilance in the collection of assets belonging to the estate.

The fact that said administratrix relied upon the advice of her attorneys, to the effect that the law governing investments of an administrator did not permit the purchase of such stock, does not relieve her of responsibility for the loss suffered by the estate, since the legal duty of investigating the marketability of rights to subscribe was imposed upon her.

The referee properly fixed the liability on the basis of the average price of ten dollars per right, where it appears that the rights were dealt in on the Detroit Stock Exchange, and that the prices at which they were sold fluctuated between six dollars and fourteen dollars.

A piano which was the property of the decedent was exempt property and should properly be set off to the widow under the provisions of section 200 of the Surrogate's Court Act. The fact that she failed to assert her claim before the referee cannot be regarded as a waiver of right to that article. Moreover, section 267 of the Surrogate's Court Act permits the surrogate to award to the surviving wife the same relief as to the setoff of exempt property which may be awarded in her favor by a separate proceeding for that relief under section 201 of the Surrogate's Court Act.

A finding of the referee as to fees of the attorney are correct. Said fees were not unreasonable in view of the services rendered and the standard of charges in estates in New York county.

MOTION to confirm report of referee appointed to hear and determine a contested accounting proceeding.

*William F. S. Hart* [*Leslie J. Tompkins* of counsel], for the administratrix.

*House, Grossman & Vorhaus* [*Naomi Ransom* of counsel], for the general guardian.

FOLEY, S. The issues in this contested accounting proceeding were referred to a referee to hear and determine. The present motion involves the confirmation of his report and the consideration of certain exceptions to the findings and conclusions made by him. The report will be confirmed.

The decedent left him surviving his widow, who is the administratrix, and an infant daughter by a former marriage whose general guardian is the objectant.

(1) The most important ground of dispute between the parties arises as to the liability of the administratrix for her failure to sell certain subscription rights to stock owned by the estate. The referee has sustained this particular objection and has surcharged the administratrix in his report with the sum of six thousand seven hundred and eighty dollars. So far as an examination of the

Surrogate's Court, New York County, March, 1927.    [Vol. 129

reported decisions discloses, the question seems to be a novel one, although in its determination the general and well-settled rules of law applying to the duties and responsibility of the legal representatives of estates must govern. The facts, briefly, are as follows: At the time of decedent's death in September, 1919, he owned six hundred and seventy-eight shares of the Detroit Creamery Company, a Michigan corporation. The administratrix retained them. In June, 1920, the corporation voted to increase its authorized capital stock. Previous notice of the special meeting for that purpose was sent to all stockholders. On June 18, 1920, a further notice was mailed to all the stockholders advising them of the authorization of the increased capitalization and notifying them that the right to subscribe to additional stock, share for share, would be granted to each stockholder. This notice further informed the stockholders that subscription must be made between July 8, and July 31, 1920. On July 8, 1920, a further notice was mailed to the stockholders with the form of subscription blank and specific mention was made that the rights to subscribe would be terminated on July 31, 1920. The referee has found that each of these three notices was received by the administratrix. She thereupon consulted her attorney regarding the advisability of exercising these rights to subscribe and was advised by him that the law governing investments of an administrator did not permit the purchase of such stock by an administrator of an estate. The subscription period was allowed to expire by her without any action on her part. Neither the administratrix nor her attorney made any inquiry or investigation as to the possibility of selling these rights. It appears that they were dealt in on the Detroit Stock Exchange between July 13 and July 30, 1920, and that the prices at which they were sold fluctuated between six dollars and fourteen dollars each. The referee has fixed the liability on the basis of the average price — ten dollars per right.

The administratrix attempts to excuse her failure to sell the rights by the fact that she relied entirely upon the advice of her attorney, that she learned of the value of the rights only at the hearings before the referee and that she was wholly ignorant of the custom of stockholders to sell the rights or the business practice with respect thereto. The referee correctly held these excuses did not relieve the administratrix of the responsibility of the loss sustained by the estate. The law imposes upon executors, administrators or other representatives the duty of active vigilance in the collection of assets belonging to the estate. In some authorities the duty is described as that of active diligence and the general rule is stated in *King* v. *Talbot* (40 N. Y. 76, 85), that a legal repre-

sentative " is bound to employ such diligence and such prudence in the care and management [of an estate] as in general prudent men of discretion and intelligence in such matters employ in their own like affairs." (*Villard* v. *Villard*, 219 N. Y. 482; *Matter of Cady*, 211 App. Div. 373; *Matter of Pinchefski*, 179 id. 578.)

Necessarily the varying facts and circumstances in a particular case may impose a liability or absolve the representative from a surcharge. But under the circumstances here, the good faith of the administratrix, her motives or intention, or her ignorance of business methods cannot alter her liability. (*Costello* v. *Costello*, 209 N. Y. 252, 259.) Applying the rule laid down in *King* v. *Talbot* (*supra*) to the situation here it is clear that a prudent man of discretion and intelligence in the conduct of his own affairs would investigate the marketability of rights to subscribe. When informed of their value he would make timely and prompt sale before the expiration of the subscription period. Nor does her reliance upon the advice of her attorney as to the rights excuse the administratrix. The legal duty of active vigilance is imposed upon her. " The advice of an attorney will not relieve an executor from the duty of active vigilance in the collection of the assets left by his decedent; he is bound to know his duty in that regard." (*Matter of Hosford*, 27 App. Div. 427, 437; *Matter of Pinchefski*, 179 id. 578; *Matter of Hayes*, 40 Misc. 500.) The surcharge by the referee and the measure of damage to the estate fixed by him is, therefore, sustained and the exceptions of the administratrix to the material findings and conclusions of his report are overruled.

(2) The referee correctly held that the piano in dispute was the property of the decedent. The surcharge for its value must be corrected in the final decree. The piano was exempt property and should properly be set off to the widow under the provisions of section 200 of the Surrogate's Court Act. The contention that she waived her right to that exempt article by her failure to assert her claim before the referee must be overruled. By section 267 of the Surrogate's Court Act the surrogate, in a decree upon the judicial settlement of the account of a representative, may award to the surviving wife the same relief as to the set off of exempt property, which may be awarded in her favor by a separate proceeding for that relief under section 201 of the Surrogate's Court Act. The latter proceeding is sometimes resorted to, but in most estates the determination is embodied in the final decree. Particularly is this so where the widow acts as the representative of the estate. It is pointed out in *Matter of Warner* (53 App. Div. 565) that " She being the sole executrix could hardly set off the amount to herself as widow, or pay herself out of the funds of the estate.

The proper time to adjust the matter was on the judicial settlement of her accounts as executrix."

Let the decree herein contain a provision, therefore, setting forth the piano as exempt property to the widow and absolving her of any surcharge for the proceeds of its sale.

(3) The remaining findings and conclusions of the referee are correct. I am in accord with his opinion that the fees of the attorney, objected to by the general guardian were not unreasonable in view of the services rendered by him and the standard of charges in estates in this county. There appears to be an ample surplus of funds, above the amount deposited in a trust company as security for one claim against the estate, which should now be distributed by the decree in this proceeding to the beneficiaries of the estate. It would appear, therefore, that application should be made to the Supreme Court to modify its order or decree which restrains any distribution by the administratrix. It was certainly not contemplated by such determination that payment of the shares of the beneficiaries should be indefinitely postponed. The entry of the decree here may be suspended until the further determination of the Supreme Court as to such distribution or a reservation may be made for a supplemental decree providing for distribution.

Submit decree on notice accordingly.