290 So.2d 498 (1974)
Katharine T. FULTON et al., Appellants,
v.
FIRST NATIONAL BANK OF FORT MYERS, Florida, a National Banking Corporation, Appellee.
No. 72-1012.
District Court of Appeal of Florida, Second District.
February 20, 1974.
Rehearing Denied March 19, 1974.
Blackwell, Walker, Gray & Powers, Miami, for appellants.
Julian D. Clarkson of Henderson, Franklin, Starnes & Holt, Fort Myers, for appellee.
MANN, Chief Judge.
"Heads I win, tails you lose" is the theory on which this earnestly argued appeal seeks to surcharge a conscientious fiduciary. The matter was disposed of by summary judgment in the Circuit Court, and we have examined the record with particular care to discern a triable issue if there be one. We conclude that there is not.
George W. Thompson died in 1967, leaving a will of which the First National Bank in Fort Myers is executor. More than fulfilling an antenuptial agreement, Thompson left to his widow fifteen percent of his gross estate as its value was finally determined for federal estate tax purposes. The appellants are the income beneficiary and remaindermen of a trust which includes all of Thompson's residual estate.
As a matter of state law, the executor might have distributed to the widow a part of her bequest as early as May 11, 1968, but at that time the value of the estate had not been fixed for estate tax purposes. In fact, the executor enlarged the amount distributable to these appellants somewhat by electing an alternative valuation of the estate. A return was filed and payment tendered in December of 1968. It was some time thereafter that a final audit fixed the value of the estate on which the widow's fifteen percent was to be determined.
It is true that the executor might have made an earlier partial distribution. This would have had three principal consequences. *499 In the first place, it would have deprived these appellants of the income from these shares during the time they were allegedly held too long. Secondly, it might have had the effect of visiting upon the widow a liability for income tax on income which was, under the terms of the will, distributable to these appellants, whereas a distribution to the widow at the time of winding up the administration of the estate would have no such effect. Thirdly, if the price of the stock had gone up instead of down, it would have laid the trustee open to the same sort of charge which the beneficiaries now level against it, which is, that it subjected the estate to the vicissitudes of the stock market.
As it happened, the value of the stock declined. Thus by the time distribution was made, the executor was required to transfer more shares than formerly would have been required to equal the monetary value fixed by the testamentary formula. It must be remembered that this was not a gift of specific shares. What we have here is an attempt to fuse two separate tracks on which the executor must proceed if it is to be faithful to the trust. On the one hand, with respect to the determination of the amount due the widow, it properly took advantage of the alternatives available to it and used the lower of two valuations, which had the effect of giving the benefit to the daughter and grandchildren. The will provides that the valuation is to be that finally determined for estate tax purposes and it is obvious that by the time that determination has been made, the stock may either have increased or decreased in value. The trustee conducted itself properly in all respects concerning the determination of the amount due the widow. On the other hand, the executor was obligated to insure that the trust investments complied with the requirements of the law. The will gives the executor and trustee considerable latitude in the choice of investments but even if it did not, there is nothing in this record to indicate the slightest breach of fiduciary duty. In fact, the appellants concede that United Utilities, the stock in which most of Thompson's considerable fortune was invested, was an appropriate investment for fiduciaries.
We have had some reservations about the unanswered question whether the trustee and executor communicated with the beneficiaries in order to determine whether they would willingly take the obligation to pay income taxes levied against the widow as a consequence of premature distribution. The trustee had indicated that in past cases it had secured the approval of all parties concerned so that those who received the income would save harmless the distributee against whom the income tax liability fell. But personal relationships here caused the trustee to think these appellants would not agree to this. Since they received the income so long as the stock was held by the executor and since the market seemed to knowledgeable deponents as likely to rise as fall, we think the executor acted prudently.
In the long run, what these beneficiaries complain of is the decline in the market value of United Utilities stock. Strong as it might be as a financial institution, the First National Bank of Fort Myers does not control the stock market. Its officers and attorneys acted with prudent regard for the rights of all of the parties concerned and the beneficiaries' action is totally without merit.[1] Their claim of negligent delay *500 is unsubstantiated by proof. Their claim that the widow was preferred amounts to an assertion that the executor should have followed a course which might have charged the widow with liability for taxes on the beneficiaries' income, a patently inequitable result. In the end they show only that the market went down, and persist in the claim that the executor, which could not have profited had the market risen, should make good the loss. Florida law does not make a faithful fiduciary an insurer against an unforeseeable drop in the stock market.
Affirmed.
McNULTY and BOARDMAN, JJ., concur.
NOTES
[1] The cases cited in support of their position are not even remotely in point. It is true that a fiduciary having a duty to liquidate and distribute might be surcharged for inattention to its duties. Laramore v. Laramore, Fla. 1953, 64 So.2d 662. But long after the administration of the Estate of George W. Thompson is concluded, the trustee will have obligations which are fully satisfied by the retention of United Utilities stock. Tallahassee Bank and Trust Co. v. Bryant, Fla.App.1st 1972, 271 So.2d 190, is a case in which a bank allowed stock warrants to expire. The obvious difference between a warrant which is valueless after a particular date and a common stock which is inherently subject to the vicissitudes of the market need not be labored. Numerous other cases of equivalent persuasive force are cited.